INTEGRAL QUICKSILVER MIN. CO. v. ALTOONA QUICKSILVER MIN. CO.

(Circuit Court of Appeals, Ninth Circuit. June 8, 1896.)

No. 280.

1. WATER AND WATER RIGHTS—APPROPRIATION AND ABANDONMENT.

Abandonment by the appropriator of a water course or ditch, where the nonuser has existed less than five years, occurs under the California stat-

ute (Civ. Code, §§ 1410, 1411) only when there is a concurrence of act and intent. Yielding up of possession and nonuser are evidence of abandonment, but this evidence may be rebutted by showing that there was no intention to abandon. Utt v. Frey, 39 Pac. 807, 106 Cal. 392, followed. Smith v. Hawkins (Cal.) 42 Pac. 453, distinguished.

**2. EJECTMENT FOR DITCH AND WATER RIGHTS—WHEN LIES.**

Ejectment was brought to recover a certain ditch and the water rights appurtenant thereto, described as the "Boston Ditch," taking water from "Crow creek, and running thence across Wiltz ravine, and taking the water therefrom, and extending thence and therefrom to the said Altoona Quicksilver Mines." *Held*, that this was a suit, not for an incorporeal hereditament merely, but for the ditch itself, and that the action of ejectment would therefore lie. Reed v. Spicer, 27 Cal. 58, Canal Co. v. Kidd, 37 Cal. 282, and Mitchell v. Mining Co., 17 Pac. 246, 75 Cal. 464, followed.

In Error to the Circuit Court of the United States for the Northern District of California.

This was an action of ejectment, brought by the Altoona Quicksilver Mining Company against the Integral Quicksilver Mining Company, to recover a certain ditch and the water rights appurtenant thereto. In the court below, there was a verdict for plaintiff, and, to review the judgment entered thereon, the defendant sued out this writ of error.

E. W. McGraw, for plaintiff in error.

C. W. Cross, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The plaintiff in error was the defendant in an action of ejectment in the court below, brought by the defendant in error, as plaintiff, to recover the possession of a water ditch known as the "Boston Ditch," in Trinity county, Cal., alleging that the plaintiff in the action was the owner of said ditch, and had been in the possession thereof for 15 years, when, upon August 29, 1893, the defendant wrongfully ousted him therefrom. The defendant in the action claimed title to the ditch, and specially pleaded that the plaintiff had abandoned the ditch and water right; and thereafter, and about May 2, 1892, the defendant had duly located and taken possession of the same as its own, and had since held the same. The action was tried before a jury, and a verdict was rendered for the plaintiff. To review the judgment thereupon entered, the plaintiff in error sues out this writ.

The assignment of error principally relied upon is that the court erred in instructing the jury upon the subject of the alleged abandonment of the ditch by the plaintiff in error, as follows:

"To abandon such right is to relinquish possession thereof without any present intention to repossess. To constitute such an abandonment, there must be a concurrence of act and intent, viz. the act of leaving the premises or property vacant, so that it may be appropriated by the next comer, and intending not to return. The mere intention to abandon, if not coupled with yielding up possession or cessation of user, is not sufficient; nor will the non-user alone, without an intention to abandon, be held to amount to an abandonment. Abandonment is therefore a question of fact. Yielding up possession and nonuser are evidences of abandonment, and, under many circum-

stances, sufficient to warrant the deduction of the ultimate fact of abandonment. But it may be rebutted by evidence which shows that, notwithstanding such nonuser or want of possession, the owner did not intend to abandon it."

It is urged that this is not a correct exposition of the law of California, as expressed in the provision in the following sections:

Section 1410 of the Civil Code of California: "The right to the use of running water flowing in a river or stream or down a cañon or ravine may be acquired by appropriation."

Section 1411: "The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such a purpose his right ceases."

One of the most recent decisions of the supreme court of the state of California construing these provisions is found in Utt v. Frey, 106 Cal. 392, 39 Pac. 809, where the court said:

"The right which is acquired to the use of water by appropriation may be lost by abandonment. To abandon such right is to relinquish possession thereof without any present intention to repossess. To constitute such abandonment, there must be a concurrence of act and intent, viz. the act of leaving the premises or property vacant, so that it may be appropriated by the next comer, and the intention of not returning. * * * The mere intention to abandon, if not coupled with yielding up possession or a cessation of user, is not sufficient; nor will the nonuser alone, without an intention to abandon, be held to amount to an abandonment. Abandonment is a question of fact to be determined by a jury, or the court sitting as such. Yielding up possession and nonuser is evidence of abandonment, under many circumstances, sufficient to warrant the deduction of the ultimate fact of abandonment. But it may be rebutted by any evidence which shows that, notwithstanding such nonuser or want of possession, the owner did not intend to abandon it."

It is contended by the plaintiff in error that a more recent decision, in the case of Smith v. Hawkins (Cal.) 42 Pac. 453, modifies the doctrine of Utt v. Frey, and so far limits the rule there announced as to hold that continuous nonuser for the period of five years, no matter what may have been the intention of the owner, operates as an abandonment of the right. In that case the court said:

"In this state, five years is the period fixed by law for the ripening of an adverse possession into a prescriptive title. Five years is also the period declared by law after which a prescriptive right depending upon enjoyment is lost for nonuser; and, for analogous reasons, we consider it to be a just and proper measure of time for the forfeiture of an appropriator's rights for a failure to use the water for a beneficial purpose. Considering the necessity of water in the industrial affairs of this state, it would be a most mischievous perpetuity which would allow one who has made an appropriation of a stream to retain indefinitely, as against other appropriators, a right to the water therein, while failing to apply the same to some useful or beneficial purpose."

We find it unnecessary to decide whether or not, under this latest expression of the views of the supreme court of California, the charge of the court to the jury was erroneous. Upon a careful inspection of the testimony which is presented in the bill of exceptions concerning the question of the abandonment of the water right by the defendant in error, we are unable to find that any witness testified to a continuous nonuser of the ditch for a period of five years before the plaintiff in error took possession. There are several witnesses upon the subject, and their testimony is more or less vague,

and some of them testify to a nonuser of a portion of the ditch at different periods, and in one instance for as long a period as ten years; yet there is no witness who testifies that the whole of the ditch was unused by the defendant in error, or by its tenants or lessees, at any time continuously for five years.   Under this state of the evidence, the conclusions of the supreme court of California in Smith v. Hawkins had no bearing upon the case.   The only question for the jury to determine in that connection was whether or not there had been an abandonment of the ditch from the fact of failure to use the ditch at various periods shorter in duration than five years, and the question was therefore one purely of intention upon the part of the defendant in error.   This question was properly submitted under the charge, which follows closely the lines of the decision in Utt v. Frey.

The .contention of the plaintiff in error that the court erred in denying certain instructions to the jury, requested by the plaintiff in error, concerning the effect of the intention to abandon the use of water not accompanied with the actual abandonment, or the nonuser thereof without the intention to abandon, and that the use must be actual and for some beneficial purpose, is met by the fact that the charge as given sufficiently covers, we think, the points covered by the requests.

The plaintiff in error insists that this action must be dismissed for the reason that ejectment does not lie to recover a water course and water rights; that the right to the use of water is an incorporeal hereditament; and that a ditch is but an excavation in the ground, and is a water course, since it is a channel or canal for the conveyance of water.   It is true that the text-books are unanimous upon the proposition ·that an action of ejectment will not lie for a water course or a rivulet.  Pom. Water Rights, § 75;  Newell, Ej. 54; Adams, Ej. 22;  Gould, Waters, § 471.   The reason of the rule is said to be the impossibility of delivering possession of a thing which is transient and always running.

The leading and almost the only decision referred to as authority for the rule is the case of Challenor v. Thomas, Yel. 143, in which the court said:

"Rivulus seu aquæ cursus doth not lie in demand, neither doth a præcipe lie of it, nor can livery of seisin be made of it, for non moratur, but is everflowing; nor can execution by habere fac. seisinam be made of it, for it is not constant to be put in possession. * * * If the land under the river or water does not belong to the plaintiff, but the river only, then, on a disturbance, his remedy is only by action on the case on any diversion of it."

In Newell on Ejectment (page 54) it is said:

"But, if the land over which the water course or rivulet runs belongs to the claimant, the water course may be recovered by bringing the action for so much land, by the proper description, covered with water."

The property described in the complaint in this case is that certain ditch, and the water rights appurtenant thereto, described as the "Boston Ditch," taking water from "Crow creek, and running thence across Wiltz ravine, and taking the water therefrom, and extending thence and therefrom to the said Altoona Quicksilver

Mines." Does the description cover property for which ejectment may be had under the law of California, as interpreted by the courts of that state?

Mr. Pomeroy, in his work on Water Rights (section 59) says:

"There is, of course, a plain distinction between the appropriator's right to the water which he diverts and his right to the canal, ditch, reservoir, or other structure through which the water is conveyed. A ditch or canal itself, used for conveying the water to a mine or elsewhere, is not a mere easement or incorporeal hereditament; it is land."

In Reed v. Spicer, 27 Cal. 58, ejectment was brought to recover possession of the "Mountain Brow Water Company's ditch, consisting of dams, ditches, flumes, and reservoirs used for mining and irrigating purposes." The plaintiff claimed title through deeds which described the ditch and 10 feet additional on each side of it, but the defendant claimed through a prior conveyance, which granted to him all the right of way in and upon the land owned by the said party of the second part, "in and to, in, to, and for, the ditch called 'Mountain Brow Company,' together with the privilege of building a dam across Little John's creek." In construing the defendant's deeds, the court said:

"The interest intended to be conveyed is literally a right of way. There are two independent descriptions of the way: First, by name, a way to, in, and for the ditch called 'Mountain Brow Company'; second, by indicating the land which the way crosses, namely, land owned by Spicer. * * * Substantially the conveyance was of the ditch, for there can be no distinction taken between a right of way in a ditch or for an existing ditch and the ditch itself. * * * If a mining ditch is to be regarded as a mere easement or incorporeal hereditament, it would follow that this action could not be maintained."

In the case of Canal Co. v. Kidd, 37 Cal. 282, the complaint described the property in litigation as "water rights, with the right to divert waters by means of a dam then in course of construction, in, to, and through a canal then projected and surveyed, extending from the dam down the easterly side of the South Yuba river, and embracing, for the distance of 840 rods in length, the same land, and the whole thereof, whereon is erected the canal known as the 'South Yuba Canal'"; and alleged that the "plaintiff was the owner of and in possession of said water right, and of its said site, for a dam, and of its dam in course of construction, and of its said site for a canal and canal thereon, projected, surveyed, and commenced," and that the defendants, with force, entered upon the possession of said property, and expelled the plaintiff therefrom, to his damage, for the recovery of which the action was brought. Coupled with the action, there was a prayer that the plaintiff be adjudged the owner and entitled to the possession of the property, and that the defendants be enjoined from interfering therewith. It was held that, though the action was in form for trespass at common law, the averments were broad enough to entitle plaintiff to a judgment for possession. The court said:

"If an action of trespass is not sufficient, it is plain that an action to recover possession of the dam site and dam in process of construction, and of the canal site and canal thereon projected, surveyed, and commenced, would afford a complete and adequate remedy"

In Mitchell v. Mining Co., 75 Cal. 464, 17 Pac. 246, the action was one for the recovery of the possession of a canal or ditch and water rights, and for damages for withholding the possession thereof, coupled with a prayer for the appointment of a receiver, and for such other and further relief in the premises as should be just and equitable. There was no demurrer to the complaint, and the trial proceeded, and the case was adjudicated upon the theory that it was an action to recover the land and the rents, issues, and profits thereof. The property in suit was thus described:

"All the canal and works known as the 'Amador Canal,' situated in the county of Amador, commencing at the north side of the north fork of the Mokelumne river, at a point where said canal taps and takes the waters of said north fork, about 200 rods above the point which is known as 'Pine Log Crossing'; thence, running in a westerly direction, down the north side of the said stream, about 18 miles, more or less, to a tunnel, and to the placer mines in the vicinity of Slabtown; from thence, through a tunnel, in a general northwesterly direction, following the sinuosities and meanderings of said canal, 22 miles, more or less, to a point on Tanner's Ranch, in the town of Sutter, Amador county, and in the vicinity of the Amador Mine,—together with all the flumes, ditches, and branch ditches, iron pipe, aqueducts, buildings, cabins, reservoirs, dams, and tunnels belonging to said works; and also all franchises, rights of way, and all water rights, and all locations for the taking of water, with the right to the waters of said north fork of the Mokelumne river."

These decisions are sufficient to establish the doctrine that in California, at least, recovery may be had in ejectment of property such as that described in the complaint in this case. No demurrer was made to the complaint in the court below, nor does it appear that the point here presented was made either on the trial below or in the assignments of error. We have given the question the same consideration, however, to which it would have been entitled had timely objection been made. Undoubtedly, the plaintiff in ejectment, suing for property described as that which is sued for in this case, will, upon his judgment, acquire possession of the ditch wherein the water runs, and of the water running therein, and of the soil beneath, as well as the banks that hold it. If the defendant desired a more accurate description of the property in controversy, he had his remedy by a motion to make the complaint more specific. We find no error for which the judgment should be reversed. It is therefore affirmed, with costs to the defendant in error.